IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL KOSSLER, )
 )
        **Plaintiff,** )
 )
v. )
 )   2:03cv679
STEVEN CRISANTI and DONZI'S BAR, )
 )
        **Defendants.** )

### MEMORANDUM OPINION AND ORDER

Before the Court for disposition are the following:

- MOTION FOR SUMMARY JUDGMENT (*Document No. 19*) filed by defendant Donzi's Bar, with brief in support (*Document No. 20*) ("Motion" and "Brief," respectively)[1];

- PLAINTIFF'S REPLY TO THE DEFENDANT, DONZI'S BAR'S MOTION FOR SUMMARY JUDGMENT (*Document No. 25*) ("Reply"); and

- PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT DONZI'S MOTION FOR SUMMARY JUDGMENT (*Document No. 26*) ("Plaintiff's Brief").

After considering the filings of the parties, the evidence of record and the relevant statutory and case law, the Motion for Summary Judgment will be granted in part and denied in part.

### Background

This civil rights action arises out of events which occurred in the early morning hours of November 11, 2001. Plaintiff Michael Kossler ("Kossler") and his friend John Trelecki ("Trelecki") arrived at defendant Donzi's Bar ("Donzi's") at approximately 11:00 p.m. and "socialized, talked, walked around a little bit, maybe danced a little bit, [and] had a couple of beers ..." Kossler depo. at 13. Defendant Steven Crisanti ("Crisanti"), a City of Pittsburgh

---

[1] Donzi's statement of undisputed material facts is set forth in its Motion.

Police Officer, was working an "off-duty" detail, or secondary employment position, at Donzi's. Crisanti depo. at 26, 30.  With the exception of his official police baseball cap, Crisanti was dressed in his full police uniform.  *Id*. at 85.

Kossler and Trelecki left Donzi's at approximately 2:00 a.m. because Donzi's personnel "were asking anybody (*sic*) to leave."  Kossler depo. at 13.[2]  Upon exiting the bar, they walked up a ramp toward a parking lot.  *Id*. at 14.  Specifically, Kossler testified at his deposition that he and Trelecki were "at the top of the ramp where it turns into a sidewalk and there is a little landing area ... you take two or three steps down, you are in the parking lot ..."  Kossler depo. at 17.

Kossler and Trelecki were not yet in the parking lot when a fight broke out on the sidewalk at the top of the ramp.  *Id*. at 17.  When the fight started, Crisanti was standing on what he describes as an "island" in the parking lot located next to the entrance to Donzi's.  Crisanti depo. at 80.  What happened next is in dispute.  Crisanti's version of the events is as follows:

> There was, apparently, a fight at the top of the steps going down towards Donzi's. I ran over to break up the fight, and someone grabbed me from behind, twisted me around.  That was Mr. Kossler.  I looked him right square in the eye.  I observed what he was wearing.  I pushed him off me.  I ran over to the fight.

Pltf's appx., ex. 3, p. 3.[3]  According to Crisanti, the fight was broken up by Donzi's security personnel before he could reach the fight.  *Id*. at 8-9.

Trelecki, on the other hand, told a different story at his deposition:

> [Crisanti] got in the middle of trying to - - got in the middle of a couple of kids that were throwing punches and pushing each other, and it was just getting hectic because all the kids were starting to surround now, and it wasn't a one-on-one battle, it started to turn into more and more kids, escalating, getting involved in this.
> I went over and smacked Officer Crisanti, tapped him on his back to tell him I was helping him out, trying to break up the kids so he didn't think he was by himself because I know him, he was a good friend.[4]

Trelecki depo. at 19.  Kossler maintains that he was not the one who touched Crisanti when

---

[2] At 2:00 a.m. Donzi's closes to the public.  Crisanti depo. at 79, 178.

[3] Exhibit 3 is excerpts from the preliminary hearing before the District Justice.

[4] Trelecki testified that he worked with Crisanti at King's Gym.  Trelecki depo. at 19.

2

Crisanti was running toward or attempting to break up the fight. Kossler depo. at 20-21, 27-28.

What happened after the fight ended is also in dispute. According to Kossler:

Officer Crisanti approached us, you know, in a loud, screaming, irate voice, pointing his finger at me telling me next time I touch him I am going to jail and I shouldn't be grabbing an Officer.
\*\*\*
Then he continued to kind of force me back where I was concerned about my face .... I thought I was going to get physically punched or slapped or something, and I was backing up.
And at one point, I believe he touched my nose. So I told him, I just had sinus surgery, I just had surgery on my nose, please, get your hand out of my face.
\*\*\*
And then Officer Crisanti maced me.

Kossler depo. at 27-28. Kossler also testified that he moved Crisanti's hand away from his own face just before being sprayed by Crisanti. *Id*.

Crisanti's account of what occurred differs significantly from what Kossler said:

I approached Kossler to ask him and then explain to him not to ever touch me or another police officer again, and to find out why he had done such a thing. He became irate. He came at me. I put my hand up and pushed him away.
\*\*\*
He bent my middle finger and forefinger completely back on my left hand.
\*\*\*
I tried to pull my fingers free. I had to reach underneath, with my right hand, and grab my OC and spray him. At that time he released my hand.

Motion, ex. I, p. 2. Kossler was arrested and charged with aggravated assault and public intoxication. Complaint at ¶ 11. In a non-jury trial before the Honorable Robert E. Colville, Kossler was found not guilty of aggravated assault and public intoxication, but was found guilty of the summary offense of disorderly conduct and fined one hundred dollars. Crisanti's Answer at ¶ 13; Motion, ex. C, p. 4-6. Judge Colville also opined on the record that Crisanti "acted reasonable." Motion, ex. C, p. 4.

With respect to Donzi's motion, the primary dispute involves the parameters of "secondary employment" by City of Pittsburgh Police Officers. Essentially, the issue is whether Crisanti was, at the time of the incident, acting as an employee/agent of Donzi's, as a City of Pittsburgh Police Officer, or, perhaps, in both capacities. At the time of the incident, "secondary employment" by City of Pittsburgh Police Officers was governed by Pittsburgh Bureau of Police Order Number 29-1 ("the Order"). Pltf's appx., ex. 7, p. 1; Crisanti depo. at 182-83. "It is the

policy of the Pittsburgh Bureau of Police to permit members to engage in secondary employment, whether compensated or uncompensated, within the guidelines set forth in [the Order]"  Pltf's appx., ex. 7, p. 1.  "Secondary employment" is defined as "[a]ny employment that is conditioned on the actual or potential use of law enforcement powers by the police officer employee." *Id*.  City of Pittsburgh Police Officers, "while engaged in secondary employment, will conduct themselves as though they were on duty, and will be subject to all departmental rules, regulations, policies and procedures set forth by the Pittsburgh Bureau of Police while engaged in a secondary employment capacity." *Id*.  Approval for secondary employment must be obtained by individual officers from the Pittsburgh Bureau of Police and is contingent upon the officer's "good standing" with the Pittsburgh Bureau of Police, as well as other qualifications not germane to this action.  *See id*. at 1-2.

The Order also provides that "[a]ll members engaged in secondary ... employment must recognize that their primary duty, obligation and responsibility is to the Pittsburgh Bureau of Police," and that "[m]embers are subject to call at all times for emergencies, special assignments or extra duty, and no secondary or outside employment may infringe on these obligations." *Id*. at 2.  At his deposition, Crisanti testified that his interpretation of his duties pursuant to the Order was that "if someone is committing a crime, and I see it, or someone requires police response, I have to respond.  I have to act in a manner as a police officer."  Crisanti depo. at 183.  Crisanti responded affirmatively when asked whether he would "be responding on behalf of the City of Pittsburgh Police Department," and he added that "if I [were] working a detail and there is a shooting up the street in another bar and they see (*sic*) officers need assistance, I got to go." *Id*. at 183-84.

The parties dispute the scope and legal ramifications of Crisanti's duties during "secondary employment" at Donzi's.  Crisanti testified at his deposition that he understood his duties for Donzi's to be as follows:

> Q: Tell me what duties you understand you were to be performing for Donzi's.
> A: My duties are as a - - for crowd control, a visible deterrant (*sic*), and, if need be, if someone does do something that would force me to have to arrest them, then so be it.  I mean, I have to do that.

```
Q:    Okay.
A:    But the primary function is security and crowd control.
      ***
Q:    As part of those duties, was it explained to you that they wanted you to
      stand near the entrance of Donzi's as people are coming into Donzi's?
A:    Yes.  And that is, A, for the visible deterrant (*sic*), but also is, the purpose
      is to serve so people know where we are at.
      On many occasions ... our function is not just for ... law enforcement, it is -
      - I have administered first aid on several occasions down there for people
      who had been falling off things and cracking their skull ..."
```

Crisanti depo. at 188-89.

After his state court charges were resolved, Kossler filed the instant lawsuit against Crisanti and Donzi's in which he brings claims for excessive force, false arrest and malicious prosecution pursuant to 42 U.S.C. § 1983 and the Fourth Amendment. Complaint at ¶ 1; Reply at ¶ 1. The Complaint also states common law claims for assault and battery, false arrest and malicious prosecution. Additionally, paragraph fourteen of the Complaint appears to state a claim against Donzi's for failure to train. Some of the language in Donzi's Reply indicates, by omission, that no claim for failure to train is being advanced, but the Counterstatement of Facts set forth in Donzi's Reply includes facts which are clearly relevant to a claim for failure to train. Accordingly, the Court will assume that a claim against Donzi's for failure to train is at issue in this case.[5] Donzi's has advanced multiple arguments in support of its motion for summary judgment.

## Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

[Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

The plain language . . . mandates entry of summary judgment, after adequate time

---

[5] The Court also assumes that the claim for failure to train has been brought pursuant to section 1983.

> for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50. However, a party which opposes summary judgment must do more than rest upon mere allegations, suspicions, general denials, and vague statements.

Discussion

A.   Whether "Fundamental Agency Law" Precludes Donzi's Liability

Donzi's contends that "[a]t the time of the spraying, arresting and prosecution, Officer Steven Crisanti was acting as a City of Pittsburgh police officer and not as an employee of Donzi's or on Donzi's behalf." Brief at 1. However, despite the fact that Donzi's was closed to the public at the time of the confrontation, and despite the fact that the confrontation did not occur on Donzi's property, there is ample evidence of record from which a reasonable fact finder could find that when Crisanti confronted Kossler he was acting on behalf of, or as an agent of Donzi's. *See* Crisanti dep. at 79-81; Manning depo. at 23-27, 40, 68. Therefore, whether Crisanti had completed his duties for Donzi's and was no longer acting on its behalf when he confronted Kossler is a genuine issue of material fact which must be determined by a fact finder.

B.   Whether Donzi's Was a State Actor

Donzi's contends that it "is not a state actor for the implication (*sic*) of section 1983." Brief at 9. Regardless of the underlying substantive right at issue, Kossler must demonstrate state action by Donzi's in order to establish its liability under section 1983. 42 U.S.C. § 1983. Otherwise, injuries allegedly inflicted by Donzi's could not be said to have occurred "under color of state law." *Id. See also*, *e.g.*, *Abbott v. Latshaw*, 164 F.3d 141, 145 (3d Cir. 1998). In fact, "state action is a threshold issue in any section 1983 case." *Boneberger v. Plymouth Township*, 132 F.3d 20, 23 (3d Cir. 1997); *Braden v. Univ. of Pittsburgh*, 552 F.2d 948, 955 (3d Cir. 1977).

On its face Donzi's is a private entity, and is not a state actor. However, the actions of a private party may constitute state action under section 1983 where those actions may be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982). The Court's independent research has revealed no cases from the Third Circuit which speak directly to the basic facts of this case, *i.e.*, when a uniformed police officer is working an off-duty security detail for a private entity. However, well-reasoned opinions from other courts of appeals lead this Court to find and rule that Donzi's employment of Crisanti *may amount to state action* by Donzi's. *See Chapman v. Higbee Company*, 319 F.3d 825, 834-35 (6th Cir. 2003), *cert. denied*,

7

124 S. Ct. 2902 (2004) (genuine issue of fact as to state action by store under "symbiotic" or "nexus" test existed where "the Dillard's security officer who stopped and searched [Plaintiff] was an off-duty sheriff's deputy, wearing his official sheriff's department uniform, badge, and sidearm," and "was obligated to obey Dillard's policies and regulations while on-duty at the store."); *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) (off-duty officer "could have been acting under color of state law" where he "was wearing his police uniform and displaying his badge, both signs of state authority" and "was wearing his gun, enabling him to enforce his authority."). As stated above, there is a genuine issue of material fact as to whether Crisanti had completed his duties for Donzi's and was acting as a City of Pittsburgh Police Officer when the confrontation with Kossler occurred, or whether he was still acting within the scope of his duties for Donzi's. Therefore, at this juncture the asserted lack of state action by Donzi's is not a valid basis upon which to grant summary judgment on Plaintiff's section 1983 claims.

C.     Whether Kossler can Maintain These Claims Despite His Conviction

Donzi's contends that Kossler "is precluded from relitigating the finding that the police officer acted reasonable (*sic*) and Michael Kossler was guilty of disorderly conduct for the incident." Brief at 7. It is well-established that "the doctrines of res judicata and collateral estoppel have a place in section 1983 litigation." *Switlik v. Hardwicke Co., Inc.*, 651 F.2d 852, 858 (3d Cir. 1981). The guiding principle is that "an action under section 1983 [cannot] be maintained on the basis of events leading to a conviction which has not been reversed or impaired by other official proceedings if a judgment in favor of the plaintiff in the civil case would imply that the conviction was invalid." *Nelson v. Jashurek*, 109 F.3d 142, 144 (3d Cir. 1997) (*citing Heck v. Humphrey*, 512 U.S. 477, 485-87 (1994)).

With respect to whether Kossler's conviction for the summary offense of disorderly conduct is entitled to preclusive effect, the Court finds and rules that Kossler may not maintain his section 1983 and state law claims for malicious prosecution and false arrest due to the preclusive effect of his conviction, but Kossler *may* maintain his section 1983 claim for

8

excessive force despite his conviction. A judgment in favor of Kossler on his section 1983 and state law malicious prosecution and false arrest claims would imply that he was unconstitutionally arrested and was not guilty of the offenses charged, when in fact Kossler was found guilty of disorderly conduct.[6] However, a judgment in favor of Kossler on his section 1983 claim for excessive force would not necessarily imply that Kossler's conviction for disorderly conduct is invalid. Kossler could have been arrested with excessive force, but could nevertheless be guilty of disorderly conduct. Therefore, Kossler's section 1983 claim for excessive force is not barred by his conviction.

With respect to Judge Colville's remark that Crisanti's actions were reasonable, Donzi's has not cited, and the Court has not found, legal authority for the proposition that the remark should be given preclusive effect.[7] Of course, whether Judge Colville thought that Crisanti's actions were reasonable is not directly relevant to whether Kossler was guilty of disorderly conduct, and Judge Colville did not need to make such an observation to find Kossler guilty. Therefore, the Court finds and rules that Judge Colville's comment does not bar any of the claims asserted in the instant action.

The only meritorious argument raised by Donzi's is its contention that Kossler's malicious prosecution claim(s) are barred because "the criminal action was not terminated favorably to the plaintiff." Brief at 8. Under Pennsylvania law, an action for malicious

---

[6] The Court's disposition of Kossler's section 1983 claims for false arrest and malicious prosecution applies with equal force to his state law claims for false arrest and malicious prosecution. The Pennsylvania Supreme Court has not addressed whether Pennsylvania courts follow the *res judicata* principles outlined above in civil rights cases which involve prior criminal actions. However, the Court finds and rules that the Pennsylvania Supreme Court would apply the general principles of *res judicata* followed by the federal courts. Therefore, the Court will grant summary judgment in favor of Donzi's on Kossler's state law claims for false arrest and malicious prosecution on the basis of *res judicata*.

[7] Additionally, the federal age discrimination case cited by Donzi's for the proposition that *res judicata* and/or collateral estoppel apply to Judge Colville's finding that Crisanti acted reasonably, and that Kossler was guilty of disorderly conduct, is not on point. *See* Brief at 7 (*citing Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).

prosecution requires that the plaintiff show, *inter alia*, that the criminal proceeding ended in plaintiff's favor. *Merkle v. Upper Dublin School Dist.,* 211 F.3d 782, 791 (3d Cir. 2000). The criminal proceeding did not end in favor of Kossler, but instead ended in his conviction for disorderly conduct. Therefore, his claim for malicious prosecution under Pennsylvania law must fail, and the Court will enter summary judgment in favor of Donzi's on said claim. As to Kossler's section 1983 claim for malicious prosecution, the Supreme Court has observed that "[o]ne element that must be alleged and proved in a malicious prosecution action is the termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). *See also Hector v. Watt*, 235 F.3d 154, 156 (3d Cir.2000) (a § 1983 malicious prosecution plaintiff "must be innocent of the crime charged in the underlying prosecution."). Like Kossler's state law claim for malicious prosecution, his federal claim must fail because the prior criminal proceeding was not terminated in his favor. Therefore, the Court will grant summary judgment in favor of Donzi's on Plaintiff's section 1983 claim for malicious prosecution.

D.    Donzi's Argument That "Section 1983 Does Not Supplant Traditional Tort Law"

Donzi's argument that "[s]ection 1983 was not intended or meant to implicate a defendant for negligent acts," and that "section 1983 was not meant to supplant traditional tort law" is an accurate statement of the law, but is nevertheless without merit. *See* Brief at 8-10. Kossler's constitutional and common law claims seek to redress alleged deprivations of his civil rights; no cause of action for ordinary negligence, which is not cognizable under section 1983 due to the lack of a federal constitutional or statutory violation, has been pled in Kossler's Complaint. *See Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.").

E.   Donzi's Argument Regarding Supervisory Liability

Donzi's argument regarding supervisor liability invokes the general rule that there is no *respondeat superior* liability under section 1983, *see Monell v. Dept. of Soc. Servs., New York City*, 436 U.S. 658, 694-95 (1978), as well as the rule that "the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). As the Court of Appeals for the Third Circuit noted recently, "[t]his typically requires proof of a pattern of underlying constitutional violations." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) (citing *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)). Furthermore, "[a]lthough it is possible, proving deliberate indifference in the absence of such a pattern is a difficult task." *Carswell*, 381 F.3d at 244.

The Court finds and rules that there is not sufficient evidence for a reasonable fact finder to conclude that Donzi's was deliberately indifferent to the constitutional rights of those with whom its security personnel, including off-duty police officers like Crisanti, came into contact. First, there is no evidence from which a reasonable fact finder could find a pattern of constitutional violations. There is evidence in the record that in the eight years preceding the altercation between Kossler and Crisanti there have been three altercations at Donzi's. *See* Pltf's exhibits 6 (Complaint filed against Donzi's for actions of security personnel in or around 1999), 18 (Complaint filed against Donzi's for alleged assault by off-duty police officer in 1997), 19 (Complaint filed against Donzi's for actions of security personnel and off-duty police officer in or around 1994). However, there is no evidence of record which establishes a causal link between these isolated incidents and any official or unofficial policy of Donzi's. Moreover, the evidence of record does not demonstrate with any degree of reliability that any constitutional violations or physical abuse by Donzi's security personnel ever occurred.[8]  Finally, the

---

[8] For example, the record includes a Complaint filed in 1994 by plaintiff Kevin Krul in the Court of Common Pleas of Allegheny County, Pennsylvania, nearly eight years before the instant altercation occurred. Pleadings, of course, are not evidence in the case in which they are filed, and in the Court's view the three Complaints in the record do little, if anything, to

uncontradicted testimony of Michael Manning, the Manager of Donzi's, establishes that its security personnel are trained by a security expert to follow a "hands-off" security policy. Manning depo. at 75. Accordingly, the Court will grant summary judgment on Kossler's claim for failure to train.[9]

F.   Whether Crisanti is Entitled to Qualified Immunity

Donzi's contends that Crisanti (and therefore Donzi's) is entitled to qualified immunity because "plaintiff has not introduced any evidence that a reasonable police officer would have acted any differently than Officer Crisanti when his hand was knocked away ..." Brief at 14. In *Wright v. City of Philadelphia*, No. 03-1633 (3d Cir. June 6, 2005), the United States Court of Appeals for the Third Circuit provided the following discussion of section 1983 claims and the privilege of qualified immunity:

> Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of his or her federal rights. When an officer's actions give rise to a § 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as a shield from suit. The primary purpose of affording public officials the privilege of qualified immunity, thus insulating them from suit, is to protect them from undue interference with their duties and from potentially disabling threats of liability. The privilege of qualified immunity, however, can be overcome when state officials violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Wright*, slip op. at 12 (citations and quotations omitted). The analysis for determining whether qualified immunity applies was explained by the United States Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001):

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. ... If no constitutional right would have

---

demonstrate deliberate indifference on the part of Donzi's.

   [9] Kossler's section 1983 claim for failure to train is unique in that such claims are typically asserted against an entity which is clearly a state actor, *e.g.*, a police department or municipality. In fact, in reviewing numerous section 1983 cases from the Third Circuit and beyond the Court has never encountered a section 1983 claim for failure to train asserted against an entity which is not clearly a state actor.

> been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier*, 533 U.S. at 201. Over a well-reasoned dissent by Judge Smith, in *Wright* the Third Circuit interpreted *Saucier* and the Supreme Court's subsequent opinion in *Brosseau v. Haugen*, __ U.S. __, 125 S. Ct. 596 (2004) to establish "a two-step qualified immunity inquiry, with the first step being the 'constitutional issue' and the second step being 'whether the right was clearly established.'" *Wright*, slip op. at 16. Finally, in the Third Circuit "qualified immunity is an objective question to be decided by the Court as a matter of law." *Carswell*, 381 F.3d at 242 (*citing Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004)).

At the first step of the analysis, a reasonable fact finder, viewing the facts in the light most favorable to Kossler, could find that he was subjected to excessive force, in violation of the Fourth Amendment, if, in fact, Crisanti sprayed Kossler with pepper spray when Kossler brushed away Crisanti's hand. At the second step of the analysis, there is no doubt that the right to be free from unreasonable searches and seizures (*i.e.*, excessive force during an otherwise lawful arrest) is a clearly established right. *See Saucier*, 533 U.S. at 201; *Wright*, slip op. at 16. However, "[o]nce these requirements are found to have been satisfied, the inquiry proceeds to another, closely related issue, that is, whether the officer made a reasonable mistake as to what the law requires." *Carswell*, 381 F.3d at 242. Our court of appeals has also reiterated that "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct ... [i]f the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Id.* (*quoting Saucier*, 533 U.S. at 205).[10] In this action, viewing Kossler's allegations in the most favorable light, a reasonable fact finder could conclude that Crisanti made an unreasonable mistake as to the appropriate amount of force necessary when he sprayed Kossler. Therefore, the Court finds and rules that *at this juncture* the factual disputes in this case preclude a judicial determination

---

[10]. The objective reasonableness of an officer's actions is a question of law to be decided by the Court. *Sharrar v. Felsing*, 128 F.3d 810, 828 (3d Cir. 1997).

13

that Crisanti is entitled to qualified immunity as to the claim for excessive force.

## Conclusion

For the reasons hereinabove stated, Donzi's Motion for Summary Judgment will be granted in part and denied in part. An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL KOSSLER,** | ) |
| **Plaintiff,** | ) |
| v. | ) 2:03cv679 |
| **STEVEN CRISANTI and DONZI'S BAR,** | ) |
| **Defendants.** | ) |

## ORDER OF COURT

AND NOW, this 1st day of August, 2005, in accordance with the foregoing Memorandum Opinion it is hereby **ORDERED, ADJUDGED and DECREED** that the Motion for Summary Judgment (*Document No. 19*) filed by defendant Donzi's Bar is **GRANTED IN PART and DENIED IN PART**. Summary judgment in favor of Donzi's Bar is hereby **GRANTED and ENTERED** on Plaintiff's claims for malicious prosecution and false arrest brought pursuant to 42 U.S.C. § 1983 and Pennsylvania common law. Summary judgment in favor of Donzi's Bar is also **GRANTED and ENTERED** on Plaintiff's claim for failure to train. In all other respects, the Motion for Summary Judgment is **DENIED**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Timothy P. O'Brien, Esquire
Email: tpob@icubed.com

Bryan Campbell, Esquire
Email: bryancmpbl@yahoo.com

Daniel F. LaCava, Esquire
Michael L. Fitzpatrick, Esquire
Daniel F. LaCava Law Firm
850 Washington Avenue
Carnegie, PA 15106